**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

LAKIN PITTS                                                              PLAINTIFF

v.                                             NO. 4:18CV00124 JLH

LINDSEY & COMPANY, INC., a/k/a
Accents & Gifts, Inc.; Housingmanager.com;
Interiors & Gifts, Inc.; and
Lindsey Software Systems, Inc.                                     DEFENDANT

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Lakin Pitts brought this action against her former employer, Lindsey & Company, Inc., for violations of the Family and Medical Leave Act, the Arkansas Minimum Wage Act, and the Americans with Disabilities Act. The parties settled the FMLA and AMWA claims. *See* Document #23. The Court denied Lindsey & Company's motion for summary judgment on Pitts's ADA claims. *See* Document #40. On March 25-27, 2019, the Court held a bench trial on the three remaining claims: a failure to accommodate Pitts's disability, discrimination by terminating Pitts's employment based on her disability, and retaliation by terminating Pitts's employment because she requested an accommodation for her disability.

**I. APPLICABLE LEGAL PRINCIPLES**

The ADA prohibits covered employers from, among other things, discriminating against a qualified individual on the basis of disability in regard to the discharge of employees, and in regard to other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). Prohibited discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). The ADA also prohibits retaliating against an employee who requests a reasonable accommodation for a disability. *Scruggs v. Pulaski Cnty., Ark.*, 817 F.3d 1087, 1094 (8th Cir. 2016).

*Failure to Accommodate*

Employers must "make reasonable accommodations to allow disabled individuals to perform the essential functions of their positions." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc) (citing 42 U.S.C. § 12111(8)-(9)); *see also* 42 U.S.C. § 12112(b)(5). In order to determine whether an accommodation is necessary, the employer and employee must engage in an interactive process. *Peyton's v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 903 (8th Cir. 2009). The process must be initiated by the disabled employee, who must alert her employer to the need for an accommodation and provide relevant details of her disability. *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 906 (8th Cir. 2015). The duty to accommodate does not arise unless the employee requests an accommodation, but the employee need not use magic words to do so. *Ballard v. Rubin*, 284 F.3d 957, 960 (8th Cir. 2002); *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 952 n.5 (8th Cir. 1999). "The notice must merely make it clear to the employer that the employee wants assistance for his or her disability." *Fjellestad*, 188 F.3d at 952 n.5.

An employer need not accommodate a disability, however, unless the disabled individual requires an accommodation in order to perform the essential functions of the job. *Brumfield v. City of Chicago*, 735 F.3d 619, 632 (7th Cir. 2013). For example, where the employer did not provide a sign language interpreter for a deaf employee, the employer was not liable for a failure to accommodate because an interpreter was not required for the employee to perform the essential functions of his position. *Kiel*, 169 F.3d at 1134. The Eighth Circuit affirmed summary judgment for the employer on the failure to accommodate claim. *Id.* Thus, when an "employee's limitations do not affect her ability to perform [her job's] essential functions, the employer's duty to accommodate is not implicated." *Brumfield*, 735 F.3d at 633; *see also Morse v. Midwest Indep.*

*Transmission Sys. Operator, Inc.*, 2013 WL 6502173 at *1 (D. Minn. Dec. 11, 2013) ("There is no evidence that Morse's Asperger's syndrome interfered with his ability to perform his job. . . In short, even if Morse were disabled, he proved that he did not need an accommodation in order to perform the essential functions of his job.").

The essential functions of a job are the "fundamental" job duties. *Duello v. Buchanan Cnty. Bd. of Sup'rs*, 628 F.3d 968, 972 (8th Cir. 2010). In determining whether a job duty is an essential function, considerations include written job descriptions, the amount of time spent on the job performing the function, and the consequences of not requiring the employee to perform the function. *Id.*

Reasonable accommodations to allow disabled employees to perform the essential functions of their positions may include making existing facilities used by employees readily accessible to and usable by individuals with disabilities, job restructuring, acquisition or modification of equipment or devices, and other similar accommodations. 42 U.S.C. § 12111(9). If more than one accommodation would allow a disabled individual to perform the essential functions of the position, the employer has the ultimate discretion to choose between effective accommodations. *Kiel*, 169 F.3d at 1137 (citing 29 C.F.R. § 1630.9 (Appendix) (1998)). The employer may choose the less expensive accommodation or the accommodation that is easier for it to provide. *Id.* An accommodation "does not have to be the 'best' accommodation possible, so long as it is sufficient to meet the job-related needs of the individual being accommodated." 29 C.F.R. § 1630.9 (Appendix) (2016). A disabled employee, therefore, is not entitled to the accommodation of his or her choice. *Minnihan v. Mediacom Commc'ns Corp.*, 779 F.3d 803, 813 (8th Cir. 2015). Whether

an accommodation is reasonable is a question of fact. *See E.E.O.C. v. Convergys Customer Mgmt. Grp., Inc.*, 491 F.3d 790, 796 (8th Cir. 2007).

*Disability Discrimination*

The ultimate question in a disability discrimination claim is whether a qualified individual suffered an adverse employment action on the basis of her disability. *See Chalfant v. Titan Distribution, Inc.*, 475 F.3d 982, 988 (8th Cir. 2007); *Otto v. City of Victoria*, 685 F.3d 755, 758 (8th Cir. 2012) (citing *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983)).

It has long been the law in the Eighth Circuit that "[a]s long as an employee shows that his disability was a 'motivating factor' in the challenged employment decision, he is entitled to some relief." *Belk v. Sw. Bell Telephone Co.*, 194 F.3d 946, 950 (8th Cir. 1999) (quoting *Pedigo v. P.A.M. Transport*, 60 F.3d 1300, 1301 (8th Cir. 1995) (hereinafter *Pedigo I*) (itself citing 42 U.S.C. § 2000e-2(m))); *see also Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 756 (8th Cir. 2016) (citing *Pedigo I*, 60 F.3d at 1301).[1]

The Eighth Circuit has noted that a 2009 Supreme Court decision casts doubt on the motivating factor causation standard in ADA cases. *See Oehmke*, 844 F.3d at 757 n.6 (citing *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009)). In *Gross*, the Supreme Court held that the Age Discrimination in Employment Act's prohibition on

---

[1] The ADA incorporates by reference the remedies and procedures utilized in Title VII of the Civil Rights Act of 1964. *See Pedigo I*, 60 F.3d at 1301; 42 U.S.C. § 12117 ("The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to . . . any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment.").

4

discrimination "because of" age requires ADEA claimants to prove but-for causation. *Id.* The Eighth Circuit has commented that *Gross*'s reasoning could arguably extend to the "on the basis of" language in the ADA. *Id.*; *see also Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1002 (8th Cir. 2012) ("We have our doubts about the vitality of the pre-*Gross* precedent. . . . We can reserve a decision on the meaning of 'because of' in the ADA for a case in which the issue is briefed."); *Palmquist v. Shinseki*, 808 F. Supp. 2d 322 (D. Maine 2011) (collecting cases, extensively analyzing the issue, and ultimately holding that an ADA discrimination plaintiff must prove but-for causation to prevail).

*Gross* did not construe the ADA, however, and neither *Gross* nor any subsequent Eighth Circuit case has overruled pre-*Gross* ADA precedent, which is still binding on this Court. In accordance with this precedent, the Court therefore applies the motivating factor standard in this ADA case: An employer has discriminated on the basis of an individual's disability if the disability was a motivating factor in the employment decision.

*Retaliation*

On an ADA retaliation claim, a plaintiff must prove that she engaged in statutorily protected activity, that an adverse employment action was taken against her, and that a causal connection exists between the two. *Brunckhorst v. City of Oak Park Heights*, 914 F.3d 1177, 1184 (8th Cir. 2019); 42 U.S.C. § 12203(a). Under Eighth Circuit law, requesting a reasonable accommodation for a disability is protected activity for purposes of a retaliation claim. *See Scruggs*, 817 F.3d at 1094. Unlike a discrimination claim, however, an plaintiff's ADA retaliation claim requires but-for causation. *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 924 (8th Cir. 2018). A plaintiff alleging that her employer retaliated against her for requesting a reasonable

5

accommodation, therefore, must prove that the employer would not have taken the adverse employment action but for the accommodation request.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

*Pitts's Employment at Lindsey & Company*

Lakin Pitts began working for Lindsey & Company in summer 2016 as a customer support representative. In this position she assisted customers via telephone with Lindsey & Company's software products. Pitts received several accolades from her employer for her work as customer support representative, including employee of the month on more than one occasion.

Pitts suffers from Attention Deficit Disorder, which causes her to be distracted easily. She requires an environment that allows her to focus. In early spring 2017 Lindsey & Company's North Little Rock office, where Pitts worked, moved to a location in Little Rock. Pitts found the new environment challenging. Her cubicle was one of many cubicles in an open area. They were made of metal and glass. She worked in close proximity to many other employees, including other customer support representatives who were often talking on the phone. Sales department members also worked nearby. When a sale was made, the entire sales department shook small plastic clappers to celebrate. At trial, Lindsey & Company employees testified that the environment was loud and distracting.

The testimony at trial established that, despite the Little Rock office environment, Pitts nevertheless performed her customer support representative job well. In fact, within a few months of the move to Little Rock, she was promoted to software trainer based on her performance. She remained in this position for approximately six months until her termination in October 2017.

*Pitts's Duties and Need for an Accommodation*

As software trainer Pitts's main duty was training customers on Lindsey & Company's housing management software products, both in person and via telephone. She also helped new customers convert their existing housing management data for use in Lindsey & Company products. These tasks required frequent travel to various customer locations in Arkansas and other states. These duties were the essential functions of her job. Pitts was able to perform the essential functions of her job as software trainer well. Customers reported good feedback on Pitts's trainings. The CEO of the company, John Lindsey, appreciated and complimented Pitts's job performance. Pitts herself testified that she conducted customer phone trainings and on-site trainings well. She did not need an accommodation to perform the essential functions of her job. Because an accommodation "was not required for [Pitts] to perform the essential functions of [her] position," her failure to accommodate claim necessarily fails. *Kiel*, 169 F.3d at 1137; *see also Brumfield*, 735 F.3d at 633.

In May Mr. Lindsey tasked Pitts with creating several one-minute training videos for customers to access on Lindsey & Company's website. The evidence at trial established that, due to her ADD, Pitts needed a quiet place to record these videos.[2] She struggled to make them. It was only after Mr. Lindsey's request to make the training videos that her work quality diminished, and the only negative feedback she received was on her training videos. However, making these training videos was not an essential function of Pitts's software trainer position. Making such videos was not in her job description. The task was not specific to her job, as Mr. Lindsey had previously asked

---

[2]Pitts also testified that she needed to write a script before recording the videos rather than ad lib them as Mr. Lindsey wanted her to do. She attributes this need for a script, like her need for a quiet space, to her ADD. No evidence established that her ADD was the cause of her need to write a script before preparing a training video. A letter from Pitts's doctor to Lindsey & Company referred only to her need for a quiet and secluded working place due to her ADD, not any other accommodation.

7

other employees — both trainers and non-trainers — to make training videos. Pitts herself testified that making the videos was not a primary job responsibility, and that the task was an additional project on top of her regularly assigned duties as software trainer. Because making the training videos was not an essential function of her position, Lindsey & Company's duty to accommodate her ADD was not implicated. *Brumfield*, 735 F.3d at 633; *Kiel*, 169 F.3d at 1137.

However, even if making the training videos was an essential function of Pitts's position, her failure to accommodate claim fails because Lindsey & Company did provide Pitts a reasonable accommodation.

Pitts first requested an accommodation in summer 2017. Although she had mentioned her ADD to a supervisor at least once before then, in summer 2017 she discussed with her supervisor, Gary Allen, that she has ADD, that the Little Rock office was hurting her productivity, that she needed complete silence to work, that she hoped to work on her videos in a quiet environment, and that she preferred to go into the company conference room when making videos. These conversations with Allen made it clear to Lindsey & Company that she wanted assistance for her ADD. *Fjellestad*, 188 F.3d at 952 n.5.

The evidence at trial established that the conference room was available for any employee, including Pitts, to reserve and use at any time. This was true both before and after she requested an accommodation. Any employee could reserve it, but testimony at trial established that the conference room was available often — more often than it was unavailable. The conference room was quiet. It contained equipment for recording videos and it was accessible and usable for that purpose. At least as early as July 2017 Pitts used the conference room on occasion. During that time, she explained to Allen that she preferred to go into the conference room when making her videos

as she knew what kind of environment she needed to complete such a task. The Court finds that allowing Pitts to use the private conference room in the Little Rock office to record the training videos was a reasonable accommodation.

Not only was the conference room a reasonable accommodation that was available for Pitts's use, the human resources manager, Mary Derby, went back and forth with Pitts regarding effective accommodations after Pitts delivered a doctor's note in September 2017. The note requested "a quieter more secluded work area" for Pitts, which would "help with her productivity and time management." Defendant's Exhibit 4. Pitts and Derby were both in and out of the office on the following days after Pitts delivered the note, but two weeks later they met to discuss Pitts's need and request for an accommodation.

At that meeting and at a subsequent meeting Pitts and Derby went back and forth with suggestions on a quieter work space for Pitts. Derby reminded Pitts that she could use the conference room when she needed a quiet space to record her training videos. They also discussed moving Pitts to a quieter cubicle, moving her downstairs to the first floor, moving the accounting manager from her office and moving Pitts into it, providing her with active noise-canceling headphones, and relocating her to Lindsey & Company's Searcy office. Pitts responded that she would meet in the middle with what Lindsey & Company could reasonably accommodate her. A week later Pitts also responded in writing to Derby that she appreciated the accommodation of being able to reserve the conference room to work through the training videos.

Pitts requested other accommodations, and she would have preferred to have a private office or to relocate to Searcy, but Lindsey & Company was not required to provide the accommodation of her choice. Although she chose to work in the conference room only a few times, it does not

9

follow that the conference room was not a reasonable accommodation for her disability. *Minnihan*, 779 F.3d at 814 ("In fact, not only did Mediacom engage in an interactive process, the record shows Mediacom offered Minnihan a reasonable accommodation, which he declined to accept."). Lindsey & Company did not fail to reasonably accommodate Pitts.

*Pitts's Termination*

On October 13, 2017, Pitts and Derby met to discuss Pitts's need for an accommodation. They called Mr. Lindsey, and the conversation turned to Pitts's difficulties in making the training videos. Although Derby had never previously recorded any conversations at work she recorded this phone conversation on her cell phone, unbeknownst to Pitts. The recording was played at trial. In the conversation Pitts explained to Mr. Lindsey the challenges she was facing in making the videos and specifically mentioned her desire to use a script to record the videos. She brought up her ADD multiple times. Mr. Lindsey suggested her inability to record the videos had nothing to do with her ADD and commented that he could record the assigned videos in under ten minutes. Pitts became increasingly agitated as the conversation progressed. The conversation ended when Pitts walked out of Derby's office at 5:00 p.m. Mr. Lindsey and Derby were surprised when she walked out of the meeting, and they considered it insubordinate.

On October 16, Mr. Lindsey instructed all software trainers and customer support representatives not to cancel or reschedule any client trainings under any circumstances. Three days later during an afternoon telephone customer training, Pitts informed the customer that she would be cutting the training session short because she had another training afterwards. Pitts did not have another training that afternoon. The incident came to the attention of management because the client called to reschedule the remainder of the training. On the following day, October 20, Derby and

Pitts's supervisor, Allen, met with Pitts and asked her why she had prematurely ended the scheduled training. At first Pitts answered that another manager had told her to cap it early. Pitts then admitted that she did not know why she gave that answer, and said she could not remember why she cut the training short. Pitts was then terminated.

At trial Pitts introduced notes handwritten by Derby regarding Pitts. The notes establish that a meeting took place between Derby, Allen, another manager, and Mr. Lindsey on the evening of October 19 — the day before Pitts's termination. The meeting was about Pitts. The notes reflect that the meeting participants discussed expectations for Pitts. They also discussed Mr. Lindsey's October 16 directive not to reschedule or cancel trainings for any reason. However, at trial both Mr. Lindsey and Derby denied remembering the meeting.

The Court does not believe Mr. Lindsey and Derby's testimony that they do not remember a meeting about Pitts the day before her termination. It is not credible that after weeks of discussing Pitts's request for an accommodation — and less than a week after the heated phone conversation about Pitts's ADD, which raised enough concern for Derby to record the conversation, and which ended with Pitts's act of insubordination — Mr. Lindsey and Derby would not remember a meeting about Pitts. The fact that both Mr. Lindsey and Derby deny remembering the meeting suggests that they believe something was said at the meeting indicating an illicit motive for terminating Pitts. This fact in particular, coupled with Mr. Lindsey's comments about Pitts's ADD during the October 13 phone conversation, leads the Court to find by a preponderance of the evidence that Pitts's ADD, and her requests for an accommodation, were motivating factors in her termination.

However, Lindsey & Company would have terminated Pitts regardless of her ADD and regardless of her request for an accommodation for a legitimate, non-discriminatory and non-

11

retaliatory reason. *See Belk*, 194 F.3d at 950 (citing *Pedigo I*, 60 F.3d at 1301); 42 U.S.C. § 2000e-5(g)(2)(B)(i)). The evidence at trial established that the day before she was terminated Pitts ended the customer training session early in direct violation of an order from Mr. Lindsey, lied to the customer about it, and then lied to her supervisor the next day about it. The Court believes that Lindsey & Company would have terminated Pitts — or any employee — for disregarding a clear instruction from Mr. Lindsey and lying about it. *See Kiel*, 169 F.3d at 1135 ("Our cases have repeatedly held that insubordination and violation of company policy are legitimate reasons for termination.").

Because the Court finds that Lindsey & Company would have made the same decision regarding Pitts's employment regardless of her request for an accommodation, she has not proved but-for causation as required for her retaliation claim. *Moses*, 894 F.3d at 924. Pitts's retaliation claim therefore fails.

She has, however, proved intentional discrimination. *Oehmke*, 844 F.3d at 756 (discrimination claims require that the disability only be a motivating factor for the adverse employment action); *Belk*, 194 F.3d at 950 (same). Where, like here, an ADA plaintiff proves that her employer intentionally discriminated against her on the basis of disability, but that the company would have made the same decision for nondiscriminatory reasons, the plaintiff cannot recover back pay or damages, nor can the Court order reinstatement. *Pedigo I*, 60 F.3d at 1301-02; 42 U.S.C. § 2000e-5(g)(2)(B). She is entitled only to declaratory relief on her ADA discrimination claim. *Pedigo I*, 60 F.3d at 1301; *see also Belk*, 194 F.3d at 950. As Pitts requested declaratory relief in her amended complaint, a declaratory judgment, but no other relief, will issue.[3]

---

[3]The Eighth Circuit has squarely held that attorney fees are unavailable to a plaintiff where, like here, the only relief obtained is a declaration that the defendant intentionally discriminated

IT IS SO ORDERED this 17th day of May, 2019.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

against the plaintiff on the basis of disability. *See Pedigo v. P.A.M. Transport, Inc.*, 98 F.3d 396, 397-98 (8th Cir. 1996) (*Pedigo II*). The Court notes that district courts have recognized that the issue of attorney fees in a case like this one is a vexed question. *See Dehne v. Medicine Shoppe Intern., Inc.*, 261 F. Supp. 2d 1142 (E.D. Mo. 2003) (noting some inconsistency between *Pedigo I* and *Pedigo II*, but concluding that *Pedigo II*'s holding — that attorney fees are unavailable where the only relief obtained is a declaratory judgment — controls).